UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DANA R. KIDD                                                                                            PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:21-CV-234-DPJ-FKB

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES                                         DEFENDANT

ORDER

Plaintiff Dana R. Kidd, a former deputy administrator for the Mississippi Department of Human Services (DHS), says DHS forced her to retire because she is Black, over 40, and disabled. The matter is before the Court on DHS's Motion for Summary Judgment [44]. For the reasons stated below, the Court grants the motion except for the Title VII race claim related to the termination of Kidd's employment.

I.      Background

This is not one of those employment cases where an employer fires an underperforming or heavily disciplined employee. By all accounts, Kidd was an excellent employee, consistently performed at a high level, and had an unblemished record. She began her DHS career in 1990 as an entry-level worker. By the time she left in 2020, she was serving as Deputy Administrator for Economic Assistance. Pl.'s Resp. [50] at 3. In that high-level position, Kidd oversaw economic assistance programs like TANF and SNAP, community services, and childcare. *Id.*

Things started to change when, in January 2019, Kidd became paralyzed from the neck down three weeks following sinus surgery. Pl.'s Resp. [50] at 5; Kidd Dep. [48-1] at 87–92. Shortly thereafter, she was diagnosed with a neurological condition called Guillain-Barre syndrome. Pl.'s Resp. [50] at 5; Kidd Dep. [48-1] at 93. Following therapy and a period of at-

home recovery, she regained the ability to walk and returned to work in surprisingly short order. Pl.'s Resp. [50] at 5; Kidd Dep. [48-1] at 97–98.

Kidd's direct supervisor at this time was Jacob Black, who was DHS's Deputy Executive Director. Pl.'s Resp. [50] at 3. While Kidd was recovering, Black packed up her office. *Id.* at 5; Greer-Ellis Dep. [48-8] at 22–23. And when Kidd returned to work, the executive staff treated her differently by not inviting her to meetings and excluding her from executive-staff lunches. Pl.'s Resp. [50] at 8–9; Greer-Ellis Dep. [48-8] at 9–11.

Around the same time, Executive Director John Davis resigned amid allegations that he misappropriated DHS funds. Pl.'s Resp. [50] at 6. Consequently, Black became acting executive director. *Id.* While in this role, Black told employees in Kidd's chain of command to exclude Kidd from emails and to report directly to him. Greer-Ellis Dep. [48-8] at 10. An employee who worked under Kidd testified that Mr. Black "had a problem with [B]lack females" and that he made clear that most employees he wanted to terminate were Black. *Id.* at 19. That same employee stated that Mr. Black would treat white employees more favorably than Black employees. *Id.* at 21.

On July 25, 2019, the Governor appointed Christopher Freeze to be DHS's new Executive Director. Pl.'s Resp. [50] at 9. Due to issues at DHS's Hinds County office, Freeze decided—in part based on Black's suggestion—that Kidd would be sent to that local office to serve as county director. *Id.* at 10; Freeze Dep. [48-12] at 8. Kidd claims that Black stripped away some of her managerial responsibilities at that point by telling her she could no longer "tell anybody what to do." Kidd. Dep. [48-1] at 120. Kidd also felt like she was sent to the Hinds County office due to her race; most of the office's employees and clientele are Black. *Id.* at 176.

2

According to one 33-year DHS veteran, she had "never seen a deputy admin be assigned to a county, period."  Kriss Dep. [48-7] at 12.

DHS employee Kristie Greer-Ellis questioned why DHS would "have someone of Dana's caliber and expertise at a county director position."  Greer-Ellis Dep. [48-8] at 16.  The move caused Greer-Ellis to ask both Freeze and Black whether they were "trying to get rid of Dana Kidd."  *Id.* at 17.  Freeze said "no," but Black "never answered."  *Id.*

Near the end of his term as director, Freeze visited Kidd in Hinds County with Black and another staff member.  Kidd Dep. [48-1] at 131.  According to Kidd, Freeze asked everyone to leave the room so he could speak privately with Kidd and then apologized for sending her to Hinds County.  *Id.*  Kidd claims that Freeze praised her work in Hinds County and said, "I should have talked to you before I sent you out here because I had some misinformation."  *Id.*

On March 4, 2020, newly-elected Governor Tate Reeves appointed Bob Anderson as DHS's executive director; he started March 16.  Anderson Dep. [48-3] at 5.  Upon arrival, Anderson named Black to his senior leadership team.  *Id.* at 24–25.  And according to Greer-Ellis, Black told her that "he would be getting information to Mr. Anderson about the current state of the agency."  Greer-Ellis Dep. [48-8] at 37.

On March 31, 2020, about two weeks after he arrived, Anderson called Kidd into his office and told her that he wanted to use her position identification number (PIN) to hire a compliance officer due to the public scandal involving Davis.[1]  Anderson Dep. [48-3] at 30; Kidd Dep. [48-1] at 135.  In other words, he wanted to use her slot to create a new position.  Anderson told Kidd she could either retire or be fired.  Kidd Dep. [48-1] at 135.  Kidd decided to retire to avoid termination.  April 6, 2020 Kidd Email [48-21].

---

[1] Every DHS employee has a PIN based upon their salary and position.  Kidd Dep. [48-1] at 51.

3

According to Anderson, he selected Kidd for termination without speaking to Mr. Black or anyone else about Kidd's job performance, tenure, work history, "or anything." Anderson Dep. [48-3] at 35–36. Notably, Anderson hired a Black woman to fill the compliance position he created, and he redistributed Kidd's duties to existing employees. *Id.* at 40; Def.'s Reply [51] at 2.

Feeling aggrieved, Kidd filed a charge of discrimination with the EEOC on April 8, 2020, accusing DHS of terminating her employment because of her race, sex, age, and disability. EEOC Charge [1-1]. On January 15, 2021, Kidd received her right to sue letters. Right to Sue Letters [1-2] at 1–2. She then filed suit in this Court asserting those same claims. Following discovery, DHS moved for summary judgment. The Court has both personal and subject-matter jurisdiction over the dispute, and the motion is now fully briefed.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014) (per curiam).  But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075 (5th Cir. 1994).

Nor does incompetent record evidence.  Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Here, DHS says Kidd relies in part on inadmissible hearsay.  *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that newspaper articles constitute hearsay and are not proper summary-judgment evidence).  DHS is correct; the record does include inadmissible hearsay.  No such evidence has been considered.  There are, however, out-of-court statements that are not hearsay under Federal Rule of Evidence 801(d).

III.   Analysis

To start with, Kidd has withdrawn or abandoned some of her claims.  In her complaint, she alleges race-discrimination claims under Title VII and § 1981; disability-discrimination claims under § 974(a) of the Rehabilitation Act of 1973 (RA); age-discrimination claims under the ADEA; and parallel claims pursuant to § 1983.  Compl. [1] at 1–3.

First, Kidd expressly withdrew her ADEA and § 1981 race-discrimination claims in her summary-judgment response. Pl.'s Resp. [50] at 33; *id.* at 19 n.13. Next, DHS says that Kidd's § 1983 claims are futile because she never identified individual defendants. Def.'s Mem. [45] at 10. The § 1983 claims would fail for a host of other reasons as well, but Kidd never responded to this portion of the motion. Her claims under § 1983 are deemed abandoned and are otherwise meritless. *See Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021) (stating that claims are abandoned when a party fails to substantively brief them (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.")).

DHS contends that Kidd also abandoned any Title VII or RA claims related to her transfer to the Hinds County office. Def.'s Reply [51] at 1. It is unclear that Kidd ever tries to argue such a theory—it appears instead that she mentions the transfer as it relates to her subsequent constructive discharge. Regardless, a charge must be filed with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). This time limit operates as a statute of limitations. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). So, assuming Kidd intended to state a claim based on the transfer, and assuming further that the move would constitute an adverse employment action, the incident is time-barred, and the claim is otherwise waived.

That leaves two claims against DHS for which it seeks summary judgment on the merits: (1) a race-discrimination claim under Title VII and (2) a disability-discrimination claim under the RA. The Court will address them in turn.

A.     Title VII Race-Discrimination Claim

Kidd offers a circumstantial race-discrimination claim under Title VII related to the constructive discharge. When such claims are considered under Rule 56, the Court follows the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 1817 (1973). Under that framework, Kidd must first establish a prima facie case of discrimination. *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 356 (5th Cir. 2019). To do that, a plaintiff must typically show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (brackets removed) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

Once a plaintiff states a prima facie case, the burden switches to the employer to state a legitimate nondiscriminatory reason for the decision. *Id.* If it does, the plaintiff must then "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves*, 530 U.S. at 143). She "may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Kidd manages the first three elements of her prima facie case, but she hits a snag at the fourth—whether she "was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556. She attempts both alternatives, but neither argument suffices. First, she says DHS replaced her with someone outside her protected group when it reassigned her duties to white

7

employees. *See* Pl.'s Mem. [50] at 21. But several unpublished Fifth Circuit opinions hold that an employee "has not been 'replaced' . . . when [her] former duties are distributed among other co-workers." *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 295 (5th Cir. 2014) (quoting *Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010)); *see also Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir. 1998) ("[W]hen an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced."). Second, she identifies Lyndsy Irwin—a white woman—as a potential comparator, but it is not apparent that Irwin was similarly situated because her job duties were so different. Pl.'s Mem. [50] at 21.

Notably though, "[t]he prima facie case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (citation and quotation marks omitted). So "while proof of all four of the *McDonnell Douglas* criteria will establish a circumstantial prima facie case, such proof is not the exclusive means of establishing a plaintiff's preliminary burdens." *Canas v. Nat'l Oilwell Varco, L.P.*, 731 F. App'x 374, 375 (5th Cir. 2018) (quoting *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)). "[W]hen a plaintiff cannot identify a similarly situated employee, he may still be able to establish a prima facie case by proving 'that it was more likely than not that the employer's actions were based on illegal discriminatory criteria.'" *Id.* (quotation marks omitted) (citing *Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 344 (5th Cir. 1990)).

Here, the Court finds that Kidd has established a prima facie case under this approach for reasons that overlap its finding that she has also created a fact question whether DHS's stated reason for the termination is worthy of credence. As noted, Kidd worked for DHS for nearly 30

years, had risen from the bottom nearly to the top, and had a spotless record.  Even DHS argues that she was assigned to the utter mess in Hinds County because of her experience and because "she was 'the go-to person, for, like almost everybody.'"  Def.'s Mem. [45] at 21 (quoting Greer-Ellis Dep. [48-8] at 8).

According to Anderson, he never considered any of that and decided to terminate her position (two weeks after arriving on the job) without discussing the decision with anyone and without prior knowledge of Kidd or her history at DHS.  Anderson Dep. [48-3] at 35–36.  He stated that he picked Kidd because she was not in her office and had not spoken to him since he arrived, though he knew she was temporarily assigned to Hinds County.  *Id.* at 23, 29.  A reasonable jury could question whether firing a high-ranking public official for that reason is worthy of credence.  A reasonable jury could likewise question Anderson's testimony that he never spoke with anyone—including Kidd's supervisor Jacob Black—about the decision or Kidd's work history.  *See* Greer-Ellis Dep. [48-8] at 37 (noting that Black told her that "he would be getting information to Anderson about the current state of the agency").  Of course, a jury

could believe Anderson, but the evidence must be viewed in the light most favorable to Kidd, and in that light, her case should go forward.[2]

As a final note, the Fifth Circuit has repeatedly recognized that "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *accord Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994); *Veillon v. Expl. Servs.*, 876 F.2d 1197, 1200 (5th Cir. 1989). On this record, the Court concludes that the better course would be to take this claim to trial even if DHS's motion meets Rule 56's standards.

B.   The Rehabilitation Act Disability-Discrimination Claim

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

---

[2] The Court is also concerned that Anderson's stated reason for selecting Kidd for termination (that she was not in her office) flows directly from Black's allegedly race-based decision to move Kidd to Hinds County. Even if Anderson was not motivated by Kidd's race, "[p]laintiffs may use a cat's paw theory to prove causation when they cannot show the official decisionmaker had a retaliatory motive, but can show that another individual influenced that decisionmaker." *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 684 n.3 (5th Cir. 2017) (citing *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)). There is record evidence of racial animus by Black, and some evidence that he moved Kidd to Hinds County to "get rid of" her. Greer-Ellis Dep. [48-8] at 17 (stating that Black did not answer when asked whether he was "trying to get rid of Dana Kidd"); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (holding that "if a supervisor performs an act motivated by [impermissible] bias that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable"). Whether the Court ultimately instructs the jury on the cat's paw theory will depend on the evidence presented at trial.

As with Title VII claims, the *McDonnell Douglas* burden-shifting framework applies under the RA. *Houston*, 17 F.4th at 585 (citing *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014)). At the first step of that framework, Kidd must prove "(1) [s]he is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that [s]he was discriminated against 'solely by reason of her or his disability.'" *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)); *accord Houston*, 17 F.4th at 586.

The parties' most significant dispute under the RA is whether Kidd must show that she suffered discrimination "solely by reason of her . . . disability" as the statute states. 29 U.S.C. § 794(a). The Fifth Circuit has held that she must. Accordingly, "an employer is liable only if the discrimination occurred 'solely by reason of her or his disability,' not when it is simply a 'motivating factor.'" *Houston*, 17 F.4th at 586 (quoting *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002)).

Kidd "believes that this is an incorrect interpretation of the statute and the causation standard." Pl.'s Mem. [50] at 30 (citing 29 U.S.C.A. § 794(d)). She therefore urges the Court to adopt the Second Circuit's construction, under which the ADA's more relaxed causation standard applies. *Id.* at 31 (citing *Natofsky v. City of New York*, 921 F.3d 337, 344–45 (2nd Cir. 2019). Though Kidd makes a good-faith argument for a different result, this Court is bound by the Fifth Circuit's holding that she must show the decision was based "solely" on her disability. Kidd makes no argument that it was, so the Court grants DHS summary judgment on her RA claim.

IV.     Conclusion

The Court has considered all arguments; those not addressed would not alter the results. And for the reasons stated, Defendant Mississippi Department of Human Services' Motion for Summary Judgment [44] is granted except for the Title VII race-discrimination claim related to Kidd's constructive termination from employment.  The parties are instructed to contact Courtroom Deputy Shone Powell to set this matter for pretrial conference the week of December 12, 2022.  Because the conference was continued and some attorneys are out of town, the Court will conduct the conference by Zoom unless all attorneys agree that they would rather appear in person.

**SO ORDERED AND ADJUDGED** this the 9th day of December, 2022.

                                                        s/ *Daniel P. Jordan III*
                                                       CHIEF UNITED STATES DISTRICT JUDGE